This case this morning is 21-6009 Wright v. Kay County Justice Facilities. Would counsel for the appellant please make his appearance and then proceed. Thank you, Your Honor. My name is Mark Hammons. I'm the attorney for the appellant, Ms. Stephanie Wright. Stephanie Wright was an employee of the Kay County Justice Authority. And as an employee, acting though as a private citizen, she made a report to the Oklahoma State Bureau of Authority of criminal mistreatment of persons in the custody of that authority. She was subsequently fired and brought in action saying that her termination was in retaliation for her speech. In the course of deciding the case, the trial judge made the decision that the case should be dismissed on summary judgment, asserting that under the first prong of the Garcetti decision, her speech was as an employee and therefore was unprotected. Respectfully, Your Honor, that's not correct. Ms. Wright was a compliance officer and that did mean that she had certain internal reporting obligations with regard to the conduct of operations within the authority. But the fact that she had a duty to report certain things internally does not mean that it was part of her job duty to make an external report to a law enforcement authority about criminal misconduct. You take it, you take as an objection to a number of the things that are in the formal job description that are attributed to Ms. Wright. As relevant here, what was the core of her job responsibility as you see it? You mentioned internal reporting with respect to what subject matter? Well, she did have a responsibility to report about whether or not certain standards were being maintained, whether or not there were compliance with the duties and schedules and staffing within the authority. She had responsibility for those sorts of things. Part of the difficulty about identifying what her responsibilities were is that although the authority has said there was a written job description, Ms. Wright has testified that was never provided to her and that when she was provided with it in the course of litigation, she noted and identified and we set out in our statement of facts, many of those duties that had never been her responsibility and that she was not called upon to complete. And that's why I was trying to narrow down and understand from you what specifically she conceived to be her role and her responsibility and how did that responsibility, let's for the moment just focus on internally, did that responsibility relate to reporting misconduct? There is nothing in the job description that talks about reporting misconduct. I'm asking you what did she conceive to be her job responsibility? She was responsible for reporting whether or not there was compliance with jail standards within the authority. And Your Honor, I'm going to concede to you that that could be considered to include mistreatment of inmates. Internal mistreatment of inmates as a report could be part of her responsibility. Well, thank you for that concession because that does seem logical to me and if that is in the scope of her subject matter. I mean, we have a case, I guess, that essentially said that it will not be determinative whether it was a report internally or externally. I mean, that is a factor to consider, but that's not going to be determinative. I guess it's our Robar case versus University of Colorado Hospital Authority. I mean, the whole point there, and I believe I'm citing the right case, but at least I reference the notion that yes, it is a factor, but it's not determinative. So what I'm trying to drill at and ask about is if you concede or accept that compliance with jail standards could include complaining about misconduct of inmates internally, why should it stop it internally? I mean, what makes that determinative when our case law says it's not? Well, Your Honor, the earlier case and therefore the controlling case of Casey versus West Las Vegas Independent School District made an explanation that is directly analogous to this case. In the Casey decision, this circuit said that when she reported violations of the open meeting law to her board, that was not protected because it was part of her duty to advise the board about those kinds of violations. But when she made that report to the attorney general's office as a criminal violation, that was outside the scope of her duties because, and to quote on that, she was responsible only for advising the board, not for ensuring that the board followed her advice. The court made a similar statement in Thomas versus Blanchard, where the person reported violations of internal zoning and other matters and then threatened to go to the OSBI when the town would not follow his advice on that. Did Thomas really turn on the question of what the entity was that he reported to as opposed to what his responsibilities were? His responsibilities were inspecting buildings. They weren't reporting misconduct as it relates to certifications of satisfaction of inspection. So, I mean, that there, it seemed to be what the case turned on, not to whom he made the report. Well, that was one of the factors, though, that the circuit cited in the Thomas case, and it has always been a factor, although not necessarily dispositive. Well, that's what you said, not necessarily dispositive. Well, that's what I'm getting at. It seems to me you're hanging your hat on the fact that she made the report to the OSBI as opposed to internally. If you accept the notion that part of her job responsibility was making reports about things that could include abusing inmates, then why wouldn't, why, if it's not dispositive, why here should that cut in your favor? Well, if you reported it to the OSBI. Yeah, well, there are two reasons, Your Honor. One, of course, is the logic of the Casey decision, which says reporting internally is one thing, but if it's not your job to enforce the report, but merely to advise, then going outside for the purpose of trying to secure compliance with that is not a job duty and remains protected. Let's stay focused on that for a second. Why wasn't it her job to enforce standards? I mean, if you're going to draw that line of distinction, then you can say, Casey, yes, I offer advice, but here she's a compliance officer. Well, but it's not. And it suggests she's supposed to make people comply. Well, you're saying that, Your Honor, based only on the title, not on the job duties. The job duties gave her neither the authority or the ability to enforce any issues of compliance. She could only advise. Her title may have been compliance officer, but she didn't have the power to require compliance. So when she took an action to secure compliance about an area where her advice had been ignored, she did just what happened in Casey, and that is went outside the scope of her job, reported a crime to a law enforcement authority as a private citizen, which is what she testified to. And there are two points that are, I think, dispositive with regard to that line, Your Honor. The first of which is the policy of the authority itself, which defines what the responsibility is, what a person can or cannot do in terms of reporting criminal conduct. And policy, I think it's 22-2B, which we cited in full in our brief, and can recite if it would be helpful to you, says that she does not have the authority to go to law enforcement. Her ability to report is limited to reporting to the administrator of the authority. And then only the administrator can make a determination about whether that will be carried forward or in what manner. She is limited in her ability to go to law enforcement by the policies of the authority itself. Now, I know that the tenant has argued that it was mandatory that you report outside, but that's clearly not what the policy says. The policy says the opposite of that. Mr. Hammond, let's assume, and I do think you raised a good argument about the policy. Let's assume for the sake of argument that you're right in your interpretation of the policy. It seems to me that there's two different factors that you and opposing counsel have hung your head on. One is, what was her role as the compliance officer? And it seems to me that she collected these videotapes for Jennifer Wright and Christopher Davis unquestionably in her role as a compliance officer. That is why she went, in fact, to the Lieutenant Ware and asked for those videotapes was because that was her role. That was the only reason that she got those pieces of evidence, those videotapes for Jennifer Wright and Christopher Davis. So that part seems to cut against you. Now you say, well, one other factor under Casey and Thomas and all of these other cases, although you say not dispositive is, but it is a factor of, as you pointed out, of whether or not she went outside the chain of command. And as Judge Holmes says, at least our later opinions that questionably say that that's not dispositive. I wonder, however, on the latter issue of going outside the chain of command, it matters that she was, in fact, a law enforcement officer. If I'm working for a copy company, and I think, you know, my CEO or the office manager is fraudulently cooking the books, and then I go to the OSBI or the FBI, that is completely outside the domain of what my role is. But if I am a law enforcement officer, it seems to me that there are, there is going outside the chain of command, and there's going outside the chain of command, and those aren't necessarily equal in all situations. And I wonder if it cuts against you that this is a law enforcement officer. So when she goes outside the chain of command, she's in effect going to a parallel law enforcement agency. What's your law enforcement officer? The closest analogy would be for her to be a detention officer. She does not enforce the law. She does not go out and arrest people. She does not bring charges to the district attorney. She does not do the things that are characteristic of a law enforcement officer. She works only within a detention facility and has no law enforcement duties or responsibility. But she is, I think it's a fair inference that she was charged with detecting criminality by detention officers, that that was her role as a compliance officer, because that's part of the accreditation of compliance with ACA standards. Yeah, now that, as we pointed out in our brief, was the duty that had been taken away from her prior to the time she made the report to the OSVI, that she no longer was charged with that responsibility. But even so, the line that this court has drawn, and I think it's a reasonable line, is that a duty to advise the board without the power or authority to enforce the advisement marks the line of job duties and responsibilities for Garcetti. In this particular case, she can did advise internally about misconduct with no action. She did not have even the right, and it's difficult for me to imagine that you can be speaking within the course of your job duties when there is a policy that says you don't go to anyone except the administrator to make this kind of a report. She admittedly made the report without the knowledge of the administrator. The defendants initially argued that it was a violation of the policy, and on its face it is. She did that because, just as in Casey and just as in Thomas, she had lost confidence in the ability of the authority to take action based on the reports, actions which she could not take, which she was not empowered to take. Let me tease out something, and I just want to play out. I don't recall seeing this in the brief, but I want to get a sense of this. Does it matter in Casey that the entity to which she made the report was the entity that was charged with responsibility for acting in the sense that it was the decision maker? I say that because one could say that if she's hired by K County Juvenile Facilities Authority as a compliance officer with a duty to report criminal conduct internally, that her duty is to the institution. It's not to her supervisor. Therefore, when she loses faith in her supervisor, she is protecting the interest of the institution. The line I'm trying to tease out is that different than in a Casey situation where she reported to the embodiment of the institution. In other words, there was nobody else to report to. Therefore, yes, when she went out, she was going outside to another entity, but in this situation, it's her acting to protect the institution that she was commissioned to protect. Did that make sense? Well, I understand the argument that you're making, Your Honor, but the test under Garcetti is what the job duties are, not whether or not you're responsible. The test under Garcetti considerations is there is a private citizen analog, and that is private citizens report crimes most commonly are the people who do report crimes. No, I guess what I'm getting at is she was paid to protect the institution, and therefore, this was an extension of what she was paid to do. That's the line of reasoning I'm trying to get your response to. Well, if that were true, then every report of criminal conduct would theoretically be protecting the institution. In Casey, when she reported the violations of the Open Meetings Act, that is an effort to protect the institution to make sure that it operates in a lawful faction and violations of the Open Meeting Law can invalidate some of the actions. So clearly, there's a benefit to the institution in Casey for her to make both the report internally and report externally. But this court said if you don't have the power to do it, if it's not part of your job to enforce that, then it's not barred by Garcetti from protection. Okay, Mr. Hammonds, your time is over. I'll give you a little time in rebuttal, but let me hear from Mr. Miller now. Well, may it please the court. My name is Jordan Miller, and I represent the appellees Don Jones and the K County Justice Facilities Authority. As noted by Mr. Hammonds, Stephanie Wright was the Accreditation Standards and Policy Compliance Officer for the K County Justice Facilities Authority, which is a Title 60 trust that runs the K County Detention Center. Judge Cawthorne granted summary judgment on sole grounds that plaintiff had not established the first element of the Garcetti Pickering test, namely whether or not Ms. Wright's speech was made pursuant to her official duties at the time that it was made. We ask that the court would affirm based on the similar reasoning to Judge Cawthorne, and if it chooses not to, that it also can alternatively affirm on numerous other grounds as laid out in the summary judgment briefing and in the briefing before this court. Well, Mr. Miller, why don't you just tell us why Casey, Mr. Hammonds is leaning a lot on Casey. Why doesn't Casey decide the case in his favor on the first amendment? Well, first of all, I would note that Casey is not as simple as Mr. Hammonds was making it out to be. There are certain elements of speech that were found to be within her official duties and other elements of speech that were not found to be inside her official job duties. I believe in Casey, when she contacted federal authorities about alleged illegal enrollment in Head Start, the court here determined that was inside her portfolio. We're focusing on the agency. That was the one that Mr. Hammonds was talking about, and that's the one I want you to talk to. Okay. Your Honor, I would maintain that here we have a situation in which this lady is, in fact, the Accreditation Standards and Policy Compliance Officer. Part of her duties, and this is not mentioned by Mr. Hammonds, is to collect and report to a compliance or accreditation party that is within the job description presented as an exhibit to summary judgment as well as here before the briefing, she has independent duties to report outside of the facility on issues that are part of her job portfolio. She's here to ensure that the Oklahoma Jail Standards as well as the ACA and other standards are properly being met, and that is exactly what she's doing here. She has testified at length that the reason... Judge Backrack has a question, Mr. Miller. Sorry to interrupt you, Mr. Miller, but you said that she has an obligation to report and the policy to report outside the agency. That's not actually correct, is it? She has an obligation to report to Mr. Jones, who then will decide whether or not it's reportable, not to the OSPI, but to the sheriff. If you look at the job description, Accreditation Standards and Policy Compliance Officer on the second page at Appendix 620, about six bullet points down, very clearly states that she does have an obligation to collect and report to a compliance or accreditation party that is specific to her job in particular. I think you're referencing the policy at 122 at Appendix 680. There is a general policy of the K County Detention Center to refer to the sheriff's office any actions, incidents, or activities that occur in the K County Detention Center that may constitute a criminal act, whether allegedly committed by an And though you are correct, later in the policy, it suggests that the report is to be made to Mr. Jones, who will then determine whether or not to report it to the sheriff, who, by the way, is an independent law enforcement, because this is a Title 60 trust. I would maintain that when you put the two together, given that she is in fact a compliance officer, does have independent reporting responsibilities, and this is within her portfolio of specifically the type of work the type of information that stems from and is part and parcel of her job duties, where she is attempting to ensure that standards of both the Oklahoma Jail standards and ACA accreditation are met, that any such report, even if outside the chain of command, is in fact part of her job duties. There are numerous cases. One of the anomalies about this case, as opposed to some of the other cases like Thomas's, you have an affirmative prohibition in effect under the policy of her going out, even to the sheriff, much less to the OSBI. She is specifically confined under the policy to report to Mr. Jones, and the policy is rather clear, I think, that it's for Mr. Jones to decide whether or not it's And so, I don't understand how you can argue, or I do understand how you can argue, but isn't it a problem for you that the policy not just doesn't authorize her, but prohibits her from going to the sheriff, much less to some other outside OSBI? Your Honor, the general policy is that it is the policy of the K County Detention Center to refer to the sheriff's office any actions by employees or inmates that may deem to be a criminal act. Ms. Wright was attempting to ensure that her job was done. She learned information stemming from her employment that she had performed an investigation while on the clock about things that she thought was part of her job, and she wanted to make sure that issues were properly being complied with. She was trying to do her job at the time she was on the clock. The Rohrabach case makes very clear that speaking outside of the chain of command is not dispositive, and there are numerous cases, I would say both Casey and the Green case as well, specifically include situations where people do go outside of the chain of command, and even outside of their organization, and is still held to be part of their official job duties. But I would wager that in those cases, unlike in this case, there was not an affirmative prohibition, I haven't gone back to look, an affirmative prohibition against going outside of your chain of command. In other words, the record, it would have been silent, and they did it, and therefore it wasn't dispositive. So you may have alternative grounds for affirmance, but the bottom line is, right now, we're asking for your best reason why that doesn't matter. I mean, that the fact that there is a policy that she would not have been complying with her job, she would have been violating the policy of her job by going to the OSBI, right? Your Honor, I do not believe that there is a prohibition. If you look at section B of the policy as discussed, it states, when an internal investigation of a staff member implicates possible criminal activity, the K County Detention Center will advise the sheriff or undersheriff who may refer the matter to the district attorney. The K County Detention Center administrator will other K County Detention Center employees may offer in furthering any such investigation. That is not a prohibition on Ms. Wright going outside her chain of command or to a separate law enforcement agency. It also says, when an apparent criminal violation potentially involves the K County administrator, any staff member may, permissive, as an individual, contact the administrator who will confidentially evaluate the information and make a determination as to There is nothing in there that says that Ms. Wright, regardless of her capacity, whether she was a compliance officer or anyone else, is barred from speaking to the OSBI. That's simply not the case. And I would argue, Your Honor, that given the general policy, which is to refer to outside law enforcement any criminal wrongdoing of either employees or inmates, especially for her particular position, that certainly would be part of her job duties. Your Honors, I would note that all of the cases talk about how you must take a broad view, how there's no bright lines, how there's practical considerations here. And this lady had a very specific job. She is the compliance officer. She is there to perform facility-level operational reviews and audits of functional areas. She is to accurately report any findings of non-compliance and recommend appropriate corrective actions. How do you respond to Mr. Hammond's argument for purpose in evidence, for purposes of summary judgment, viewing the evidence favorably to Ms. Wright, that even if we credit your argument at the time that she reported this to the OSBI, she had been removed from that responsibility? What's your response to that? I do not believe the evidence is that she had been removed. I believe the ACA accreditation was just complete at the time of this particular report. Deposition, did she not, that Mr. Jones specifically told her, don't be doing this anymore, right? Your Honor, her job duties were never taken from her. I think we're conflating a few periods of time. This job description was in place in 2016. Stephanie Wright made the report to the OSBI on February 6th, 2018. She maintains that she believed in the aftermath of making her report on February 6th that her job duties had been taken away from her. Now, that is disputed by Don Jones, who maintains he never told her that. But in the aftermath of February 6th, yes, she was I don't believe the evidence is that at any point prior to February 6th, that her duties as a compliance officer with duties, including independent reporting duties, had at any point been taken away from her. So I'm not sure I would agree, Your Honor. Okay, so I just want to make sure I understand what you said. So at the time that she reported to the OSBI, her deposition that she no longer had this responsibility had been taken away from her as the ACA compliance officer. Even if the ACA portion of what exactly needed to be done in terms of obtaining ACA accreditation, I think her testimony, what I think you're referring to, Your Honor, is that they were just not seeking ACA accreditation at that time. No, I'm just trying to make sure that I paraphrased what you just told me. I'm just asking, did I get what you said right? I believe so, Your Honor. I do not believe that her job as an accreditation officer in full, including the job description details that are laid out in the description, I don't believe there's evidence that that job had been taken away from her. I do believe there was evidence that ACA accreditation was not being sought at that moment. But she thought that it had been based on what she said Mr. Jones had told her, right? She also had another situation in which she had various issues with Matt Ware, who was the chief of security, and it had various conversations according to her testimony about Matt Ware. And her testimony is that Don Jones said, in essence, I don't want to hear anything more about Matt Ware. Don also denies saying that, but rather says that he stated, please just put it in writing. But her reasoning for why she went outside the chain of command, as described, is that she did not believe Don Jones was going to handle a situation involving Matt Ware. I would argue, Your Honor, is that she was attempting- Counsel, let me get a word in here as to why. Which occurred first, and when did it occur? Because the appellate says specifically that she needed permission, even as a compliance officer, to get her job done. In other words, she had to go to somebody above her to be able to get a file or something like that. So did that occur after that she thought that she had been removed from her job or before? That is after, Your Honor, and I believe you're referring to testimony that in the aftermath of February 6th, her keys were briefly taken while they were doing an investigation, and the DA's office was in her office. They were provided back to her on Monday morning, just so that over the weekend, they didn't get into her things. She testified- So over the weekend, she was not the compliance officer. That was after she had made the report, Your Honor. She makes the report on February 6th. The next day, the DA and the OSBI begin doing an investigation. There is a brief period in which she is not- The keys are taken from her office so that no one can get into her things. They're provided back to her Monday morning. Over the next six months, and again, she is not terminated until August of 2018. Six months later, her testimony is that she believed, also that she kind of came up with this out of her own head, that she could not do her job anymore. We're conflating a few different periods of time, Your Honor, but in the aftermath of making her report, she does believe, according to her testimony, that she was not to do her job. That was not the case, but it is after she made her report, not before. In fact, she's claiming that that was an element of retaliation. I think it's important to make sure we're talking about the same periods of time, Your Honor. Based on all of the case law, this is a unique case. I note that. This is a compliance officer whose duty includes making independent reports to make sure that state statutes and jail standards are being followed. That is what she is attempting to do when she makes her report to the OSBI. She was trying to make sure that various acts of alleged criminality and violations of Oklahoma jail standards that she believes is occurring based on knowledge she has received stemming from and which is part of her portfolio, part of her job duties. Stating conclusions doesn't really help me much, okay? So let's just talk this out for a second, and what I want to get clear, you're saying there were conflating periods of time, but what I want to understand is you said that, and this goes to Judge Bacrax on a line of questioning. She said she was telling people she believed that she had their job duties taken from her. Did she believe that based upon Mr. Jones' statements, according to her testimony, at the time that she went to the OSBI? No, Your Honor. She believed that her job had been taken away from her after the OSBI statement had been made and after the investigation she began. The reason she believes that, Your Honor, is there was a brief period over the weekend when the DA's office and the OSBI start doing their investigation where she does not have access to her office, whereas the following Monday morning it is then given back to her. It is because she has made the report to the OSBI that the OSBI and the district attorney's office begin doing an investigation, which causes her keys to be taken from her office for a brief period of time, which she takes to mean that her job has been taken away. I thought she had made some statement that Mr. Jones had told her that her accreditation duties were taken away, that she testified to that in her deposition. Did she not? I believe you're referring again to the ACA portion of it. That's exactly what I'm referring to. I'm asking you the timing of that. When did she believe that occurred? I would have to double check, Your Honor, and I'll be happy to do supplemental briefing on this point, but I believe the incident you're referring to is before. Yes. Okay, well, let's assume it's before. Then all I want to try to tease out is what is the legal import of her belief that her job duties were taken away when she went to the OSBI? In other words, let's say you're saying as a matter of fact, her duties were not taken away, but if Jones, if she had been told by Jones, and look, we're construing the record in the light most favorable to the plaintiff. If she says that Jones told her that, what is the legal import of that relative to her going to the OSBI at that juncture? In other words, you don't have this job as it relates to the OSBI. I'm just trying to ask what's your sense of the legal import of that belief? Does it matter? Is it relevant? If the fact is her job duties were not taken away? Your Honor, I would maintain that her job is what it is. That's not really. Okay, good. You're saying her belief is irrelevant? I would say that her job is what it was. There's nothing in the record from Don Jones that that occurred. And her belief certainly is not anything that would bind and mean that she didn't have that job. Correct. Okay. Thank you. Any further questions from the panel? Okay. Let's go with three minutes, Mr. Hammond. You definitely do not need to take it all but you have it if you want it. Thank you, Your Honor. Mr. Hammond. Mr. Hammond. Yes. I discussed what was going on between Judge Holmes and your opposing counsel. You appeared to disagree violently. You heard his answer. I want to give you a chance to respond to what appeared to be you're disagreeing with. Yes, Your Honor. The facts as presented in the summary judgment, which has to be assumed to be correct from the plaintiff standpoint, is that Ms. Wright was told two things prior to going to the OSBI. First, her ACA reporting requirements were taken away from her. That duty was just gone. It wasn't in her portfolio anymore. Secondly, she was given an instruction not to make any more complaints about Mr. Ware, who is the person primarily abusing inmates in that. So, she's given an instruction by the head of the authority about what she is supposed to do in the context of her job. Under the policy relating to reports of crimes, it is the administrator, Mr. Jones, who makes the decisions about whether or not those claims will be brought forward to any agency. The sheriff, by the way, is not an independent agency. The sheriff sits on the board of the authority. But, be that as it may, for purposes of summary judgment, it has to be assumed that the administrator, her supervisor, has taken away her ability to do ACA reports and instructed her not to make any more complaints about Mr. Ware, even in the face of criminal conduct by Mr. Ware. When she disregards that instruction, she is acting contrary to her job responsibilities. Her job responsibilities ultimately are to do what her supervisor tells her to do. And, by the way, her testimony was corroborated by her immediate supervisor thereafter. But, that's the sequence of events. The two critical withdrawals of authority occurred before she ever made a report. And, I think it's pretty clear, pretty universal, that when you go against an instruction from your supervisor, and the defendant itself had argued that her actions were in violation of the policy that they now say she didn't violate, certainly is a question of fact. But, let me ask you, the policy, just be clear that the policy we're talking about is the policy related to internal investigations of staff, right? That's correct, your honor. Well, that policy provides a sequence of what an employee can do, but it doesn't explicitly say you cannot do what's in the sequence. Well, I think it says when you have to do this sequence, then you're forbidden from deviating from the sequence without violating the policy. If the policy says you must report to the administrator, and then the administrator makes the decision about what happens next, you're clearly not following the policy if you make the decision to go to an outside agency over the administrator's authority, and contrary to the instructions she had received prior to going to the OSPI. Okay, thank you. Any further questions? All right, case is submitted. Thank you, counsel, for your time.